DEMOCRATIC CENTRAL COMMITTEE OF the DISTRICT OF COLUMBIA, et al., Petitioners,

v.

The WASHINGTON METROPOLITAN AREA TRANSIT COMMISSION, Respondent,

D.C. Transit System, Inc., Intervenor.

On APPLICATION FOR FEES AND EXPENSES "COOTER— HAZEL".

Nos. 21865, 24398, 24415 and 24428.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 15, 1993.

Decided March 8, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied March 24, 1994.*

Leonard N. Bebchick, Washington, DC, was on the Request for Payment of Fees and

---

* Circuit Judge Rogers did not participate in the    Suggestion for Rehearing En Banc.

Expenses for the Security Trust Company, N.A.

Landon G. Dowdey, Washington, DC, for Democratic Central Committee of the District of Columbia, et al., petitioners in Nos. 21865 and 24398 and with whom Gilbert Hahn, Jr., Washington, DC, for the Black United Front, et al., petitioner in No. 24428, were on the Objection to the Request for Fees and Expenses.

John Payton, Corporation Counsel for the District of Columbia, with whom Charles L. Reischel, Deputy Corporation Counsel, and Lutz Alexander Prager, Assistant Deputy Corporation Counsel, Washington, DC, for the District of Columbia, petitioner in No. 24415, were on the Response to the Request for Fees.

Before: BUCKLEY and RANDOLPH, Circuit Judges, and MACKINNON, Senior Circuit Judge.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

The Security Trust Company, N.A. ("Trust Company"), Escrow Agent/Depositary for the Riders' Fund ("Agent"), has applied to the court to authorize the Riders' Fund to pay the following billings for attorneys' services rendered and expenses incurred in 1993 for the benefit of the Riders' Fund:[1]

| | |
|---|---|
| Cooter Law Firm, July–November | $19,689.47 |
| Hazel & Thomas Firm, July–November | $17,406.28 |

The application details the expenses and services rendered. The District of Columbia has filed a response entitled "Bebchick Request for Fees" that objects to some fees and expenditures in subject billings and approves others. The Trust Company filed a Reply to the objections. Messrs. Hahn and Dowdey have also filed an objection to the "Bebchick Request for Fees and Expenses."

Since we are very familiar with the services of the attorneys, and the court approved their employment and fee schedules when they were employed, the court upon consid-

eration of the Application, the Response, the Objections and the Reply filed by the Trust Company generally approves the billings with a few comments.

### THE OBJECTIONS

With respect to the Response of the District of Columbia and the reference in the Objections by Messrs. Hahn and Dowdey we first note that it is erroneous to entitle such pleadings as "Bebchick's" Request for Fees. The Request is by the Trust Company, the Escrow Agent/Depositary of the Riders' Fund charged with the responsibility for collecting some $5 million from D.C. Transit and enforcing the judgment it has obtained against D.C. Transit.

### THE OBJECTION TO PAYING THE ATTORNEYS' BILLINGS

The District of Columbia objects to $2,155.75 of the $19,689.47 billings by the Cooter Law Firm, employed as specialists in Maryland real estate law and foreclosures, for: inter-office communications, unidentified telephone consultations and insufficiently documented hours (arbitrary 10%—$1,800.00), billings for support staff, copying ($99.50), facsimile transmissions ($37.50) and messenger fees ($218.75).

The District also objects to $1,504.98 of the $17,406.28 in billings by "The Hazel and Thomas" firm, employed as specialists in bankruptcy law and creditor's rights, for: unexplained telephone conferences with Mr. Bebchick, an arbitrary 5% of the time spent drafting a complaint and discovery involving "apparent" redundancy and insufficiently documented hours ($561.16), time spent "perusing classified ads in the *Washington Times* for foreclosure notices" ($875.00), alleged triple billing for subscription to *Washington Times* ($61.17) and copying ($7.65).

Messrs. Hahn and Dowdey also filed "Objections to the 'Bebchick' Request for Fees and Expenses."

■ With respect to the billings by the Cooter Law Firm for "in house messenger services" totaling $218.75: These billings

---

1. The court previously ruled by Order of December 28, 1993 on the request of the Trust Company to pay the billings of Leonard N. Bebchick (counsel) and Bernard Locraft (surveyor).

were incurred in the transport of legal documents from the District of Columbia and (a) their filing in the Circuit Court in Upper Marlboro, Maryland and (b) deliveries of original and oversized real estate materials between locations in the District of Columbia and those in Montgomery and Prince George's Counties, Maryland. These filings were all in connection with the real estate foreclosures on behalf of the Riders' Fund. The Cooter firm employed a driver skilled in effecting court filings. Trust Company Reply to Response of District of Columbia, Dec. 27, 1993, at 5–6. We do not consider that any adjustment is necessary with respect to this billing. This is not a function of a "support staff." Cf. In re Olson, 884 F.2d 1415, 1426–27 (D.C.Cir.1989).

■ We reject the objection by the District based on the contention that the billing for checking the real estate foreclosure notices in the Washington Times was completely unnecessary and should be eliminated in its entirety. With Transit having so many judgment creditors, and such substantial sums being involved, we consider it to be very important to have the foreclosure notices checked by a person with thorough knowledge of foreclosure procedures and real estate law. This is not a mere clerical function.

We also completely reject the objection to the Hazel billing that the District characterizes as $61.17 in "triple billing" for subscriptions to the Washington Times. Subscriptions for newspapers run consecutively and are cumulative—if one pays for a further subscription while one subscription is running, it merely extends the existing subscription.

## RISK OF NON-PAYMENT

■ The District of Columbia also contends that a provision of "the settlement [Compromise A]greement ... largely governs this litigation" and that "counsel should continue to share some of the risk of litigation." They cite a provision of the putative Compromise Agreement that provided:

No other attorney's fees or expenses [other than the $1,000,000.00 provided] will be paid or payable to any of the parties hereto out of the funds provided by the Compromise Agreement [for the collection of the $5,000,000.00 remaining unpaid].

(Emphasis added). This is a restriction on paying additional attorneys' fees or expenses to "any of the parties hereto" (emphasis added), in addition to the $1 million that the Compromise Agreement provided would have been paid to Hahn and Dowdey had they been successful in collecting the remaining $5 million due the Riders' Fund. The limitation of this provision to the "parties thereto" refers to the Democratic Central Committee, et al., for their attorneys' fees or the other parties to the case for their attorneys' fees. The Trust Company was not a party to the case or the Compromise Agreement. Others who might necessarily be employed to collect the remaining $5,000,000.00, or to protect the Riders' Fund, are not restricted by this provision.

Secondly, because Transit failed to pay the remaining $5 million in restitution, the provision of the Compromise Agreement with respect to the payment and restrictions on the payment of attorneys' fees to "parties (t)hereto," never became effective—its provisions never came into effect—and that portion of the Agreement is not binding on the court. The court, however, in certain instances has generally followed some of the provisions of the Agreement in circumstances where it was reasonable to do so.[2]

The court thus rejects the contention that a portion of the fees of counsel for the Trust Company should be held back and that counsel be required to share the risk of litigation. The Trust Company as Agent retained counsel and they are not engaged in contingent fee litigation. They are not in a position of sharing in a percentage of recovery as in contingent representation. The court approved the purpose of their employment and the rate of their compensation prior to the time that they were employed.

2. Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n, 12 F.3d 269, 272 (D.C.Cir. 1994) ("Notwithstanding that the Compromise Agreement never closed we apply the same standards for the payment of expenses.").

For the above reasons we therefore find no basis for imposing the "risk of non-payment" on attorneys presently employed by the Trust Company.

APPLICATION OF *IN RE OLSON*

■ The District of Columbia cites *In re Olson*, 884 F.2d 1415 (D.C.Cir.1989), in support of some of its objections. That case was decided in 1989 by the Special Division of the Court of Appeals for the District of Columbia Circuit for the Appointment of Independent Counsels. However, *In re Olson* and this case are distinguishable, particularly in the detailed knowledge that was currently furnished to this court which supports the billings. During the progress of this litigation this court timely acquired specific knowledge

that makes it unnecessary for attorneys in their billings to submit the same detail of the subject of their conferences and consultations as if the court were learning for the first time what happened over a past six-year period. *Olson* involved a request for attorneys' fees and costs of $1,259,072.69 for a non-indicted defendant in a protracted Independent Counsel investigation that began on March 10, 1983. The Special Division of the court did not acquire any knowledge of the extent or nature of the attorneys' services in *Olson* until the subject of the investigation filed his application for fees six years after the case began.

Whereas here, the Trust Company, as set forth in the margin,[3] made timely periodic

3. 7/9/92 Court order approving the appointment of Mr. Bebchick as counsel for the Riders' Fund.
7/22/92 Status Report No. 1 detailing D.C. Transit's default under the promissory notes.
10/9/92 Letter from Mr. Bebchick re: retention of Harold Gordon on access to the Georgetown Lots.
10/20/92 Status Report No. 2 updating court on status of Riders' Fund and notifying the court of the retention of Raymond Sczudlo of Weil, Gotschal & Manges subject to court approval.
11/6/92 Letter from Mr. Bebchick re: billing statements for expenses related to the Georgetown Lots.
11/16/92 Court order to pay fees based on the invoices submitted on 11/6/92 for Bernard Locraft (engineer), Gilman Title Agency, Inc., and Mr. Bebchick for funds advanced.
11/27/92 Notice of Foreclosure Sale of the Georgetown Lots.
12/29/92 Notice of Sale of Collateral—Navy Yard Note.
1/15/93 Letter from Mr. Bebchick re: purchase of tax sale certificates on the Brookland Garage.
1/19/93 Court order authorizing Security Trust Company to disburse funds to purchase the tax sale certificates on the Brookland Garage.
2/9/93 Letter from Mr. Bebchick re: payment of expenses for Georgetown Lots closing based on attached billing statements.
2/11/93 Letter from Mr. Bebchick re: information of the Maryland rights of way.
2/12/93 Court order to pay costs associated with the foreclosure of the Georgetown Lots and to pay the expenses of Cooter & Gell for their services as substitute trustee for the sale of the Navy Yard note.
3/5/93 Retainer agreement with Harold Gordon—specifically subject to court approval.

3/9/93 Security Trust Company Motion to Approve Retention of Special Counsel—Harold Gordon—for the purpose of enhancing the value of the Georgetown Lots.
3/12/93 Update on Superior Court Action concerning Security Trust Company's efforts to obtain a judgment on the promissory notes in the Superior Court.
3/25/93 Security Trust Company Response to Motion to Appoint Gilbert Hahn, Jr., detailing Mr. Gordon's qualifications.
3/26/93 Letter from the Security Trust Company re: Navy Yard note sale proceeds.
4/12/93 Notice of Foreclosure Sales—Montgomery & Prince George's Counties properties.
4/26/93 Notification of Engagement of Associate Counsel—Frank Dicello of Hazel & Thomas. The attached billing agreement specifically stated that it was subject to court approval.
4/26/93 Request for payment based on enclosed billing statements for Bernard Locraft, Cooter & Gell, and Weil, Gotschal & Manges.
5/10/93 Letter from Mr. Bebchick re: access to the Georgetown Lots.
5/13/93 Letter from Mr. Bebchick re: trestle over Glover–Archbold Parkway.
5/13/93 Court order to pay Cooter & Gell based on attached billing statements.
5/17/93 Letter from Mr. Bebchick re: payments to Bernard Locraft.
5/25/93 Court order to pay Locraft firm based on attached statements.
6/4/93 Notice of Foreclosure Sales—Montgomery and Prince George's Counties properties.
6/17/93 Security Trust Company Request to Effect Disbursements by June 30 with Mr. Bebchick's billing statement attached.
6/18/93 Letter from Mr. Bebchick re: reimbursements to Cooter & Gell for advertising and bond payments advanced to cover foreclosure costs.
6/28/93 Court order to reimburse Cooter & Gell. There were also court orders to pay Mr.

reports to the court on the progress of litigation and the services being rendered by counsel. The court is thus very familiar with the subject of communications and consultations between counsel, and the progress and difficulty of the litigation in which they are involved, without having the subject matter of each consultation detailed for every communication and expenditure.

This case is therefore distinguishable from *Olson* in the extensive knowledge of the nature of the attorneys' services being furnished that this court acquired as the case progressed. In addition the Trust Company is acting pursuant to an order of the court and this court, as heretofore stated, approved the purpose of the employment of the Trust Company's outside counsel and their schedule of compensation prior to their employment.

Moreover, we consider the $5,000 and $3,500 average fees per month for the Cooter and Hazel firms respectively to be reasonable in light of the difficulties of their litigation and the specialized services rendered with which we are familiar from the periodic reports. In addition the Vice President of the Trust Company in charge of overseeing the Riders' Fund reviewed and approved the billings as fair and reasonable in amount and substantiated the performance of the subject billings submitted herewith. Trust Company Reply to Response of District of Columbia, Dec. 27, 1993, at 8 n. 5.

> Bebchick, Weil, Gotschal & Manges, and to pay Mr. Gordon the balance of his retainer.
> 7/6/93 Notice of Status Conference in the Superior Court concerning the attached Brookland Garage rental payments.
> 7/16/93 Letter from Mr. Bebchick re: expenses related to foreclosure sales.
> 8/18/93 Court order to pay Cooter & Gell, Hazel & Thomas, and Bernard Locraft based on billing statements filed with the court.
> 9/8/93 Court order to pay real estate taxes on Georgetown Lots.
> 9/10/93 Letter from Mr. Bebchick re: Prince George's County properties—Konterra Industrial Park.
> 9/24/93 Notice of Superior Court Action— copy of Judge Burnett's order awarding attached rental payments to the Riders' Fund.
> 10/20/93 Status Report No. 3 detailing the fraud suit initiated in the Superior Court by the Security Trust Company against the Chalks, D.C. Transit, and the FDIC.

The District of Columbia government also apparently overlooks that the Compromise Agreement provided that $1 million in fees were to be paid as attorneys' fees for the collection of the $5 million remaining unpaid and that the Trust Company has been very successful in enforcing the rights of the Riders' Fund.[4] Having already collected over $350,000 in rents from the Brookland Garage, obtained a judgment against D.C. Transit for $4,976,000, obtained title by foreclosure to various real properties in the District of Columbia, Montgomery and Prince George's Counties previously owned by D.C. Transit, obtained $3,900,000 by discounting the collateral notes on the Navy Yard property and filed a comprehensive fraud suit against the Chalks, D.C. Transit and the FDIC.

It is accordingly ordered that the Trust Company pay the billings of the Cooter ($19,-689.47) and Hazel firms ($17,406.28) and charge the Riders' Fund therefor.

*Judgment accordingly.*

> 11/2/93 Update on Superior Court Action notifying the court that Claire Chalk appealed Judge Burnett's order to the D.C. Court of Appeals.
> 11/9/93 Supplement to Status Report No. 3 indicating that the Security Trust Company would not seek comparable relief in this court pending the taking of discovery.
> 1/6/94 Memorandum from Mr. Bebchick re: possible tax-exempt status of the Riders' Fund; retention of Ginsburg, Feldman & Bress to represent the Riders' Fund regarding tax matters.

4. For some of the successful efforts of Mr. Bebchick and employed counsel to date see *Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n*, 12 F.3d 269, 271–272 (D.C.Cir. 1994).